UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joan D. Wittkowski,

     Plaintiff,

v.

                                                     MEMORANDUM OPINION
                                                     AND ORDER
                                                     Civil No. 11-1602

PNC Mortgage; and
XYZ Corporation; ABC
Partnership; John Doe (1-50)
and Mary Roe (1-50), whose
true names are unknown to
Plaintiff,

     Defendants.

_____

     Richard W. Petty, RWP Law Office, Counsel for Plaintiff.

     David A. Schooler, Briggs and Morgan, P.A., Counsel for Defendant PNC
Mortgage.

_____

     This matter is before the Court upon the Plaintiff's motion for preliminary

injunctive relief.

## I.    Background

     Plaintiff purchased a home in Clearwater, Minnesota in 1981, for $39,700;

the mortgage deed held by the United States.  (Complaint ¶ 11.)  Plaintiff

refinanced her home with National City Mortgage on May 10, 2007, for $173,600.

(<u>Id.</u> ¶ 12.)  On March 6, 2009, Plaintiff received a letter from National City Mortgage, informing Plaintiff that she had defaulted on the mortgage.  (<u>Id.</u> ¶ 14.) Plaintiff alleges that she was approved for a loan modification on May 1, 2009 at an interest rate of 5.875% for a loan term of 480 months with the first payment of $1,309.47 due on June 1, 2009.  (<u>Id.</u> ¶ 15.)

On June 3, 2009, Plaintiff alleges that she received a letter from National City Mortgage which stated "If you qualify under the federal government's Home Affordable Modification program [("HAMP")] and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure."  (<u>Id.</u> ¶ 17.)  Plaintiff alleges that on August 24, 2009, she entered into a Home Affordable Modification Trial Period Plan ("TPP") contract. (<u>Id.</u> ¶ 18.)

Plaintiff alleges that she received a letter dated October 1, 2009 which informed her that National City Bank had become part of PNC Mortgage ("PNC"), and that on November 12, 2009, she received a fax from PNC with four documents she had previously submitted for the loan modification.  (<u>Id.</u> ¶¶ 20 and 21.)  She was instructed to white out the dates and put in the current date and resubmit the information.  (<u>Id.</u>)  Plaintiff did so and resubmitted the documents.  On November 19, 2009, Plaintiff alleges she received another letter from PNC notifying her that additional documents were needed.  (<u>Id.</u> ¶ 23.)  She alleges that she received another letter in December 2009 notifying her that additional documents were needed.  (<u>Id.</u> ¶ 24.)

In January 2010, Plaintiff alleges she was notified by letter acknowledging that Plaintiff was participating in HAMP, but that she was at risk of losing

eligibility for a permanent modification unless she submitted the requested additional documents - which was evidence of required trial plan payments and income verification.  (Id. ¶ 26.)  Plaintiff alleges that such documents were provided PNC.  (Id. ¶¶ 27-29.)

On March 15, 2010, Plaintiff alleges that PNC returned to her a check in the amount of $437.12, because such amount was insufficient to reinstate her loan from default.  (Id. ¶ 30.)  Plaintiff then received a notice of default on March 16, 2010.  (Id. ¶ 31.)  Plaintiff had submitted a hardship assistance request under the Making Home Affordable Program ("MHAP") but PNC requested additional information before determining whether assistance was appropriate.  Plaintiff alleges she provided all requested information.  (Id. ¶ 34.)  On June 25, 2010, Plaintiff was notified that her property would be foreclosed.  (Id. ¶ 37.)

In her motion for injunctive relief, Plaintiff claims that she and her attorney spoke with a PNC Mortgage representative on August 27, 2010 to discuss her mortgage modification.  Plaintiff alleges she was informed that she qualified for a modification and that the terms were being ironed out.  Plaintiff requested the sheriff's sale date of September 7, 2010 be cancelled, but was told that the PNC did not normally cancel a sheriff's sale until the morning of the sale.

PNC thereafter executed a sheriff's sale of Plaintiff's home as previously scheduled on September 7, 2010.  Plaintiff believes that HUD purchased the home for $186,416.59.  (Id. ¶ 41.)  On April 15, 2011, an Eviction Order was entered.  On or about June 7, 2011, a lockout was executed on the property.

By this motion, Plaintiff seeks an Order setting aside the Eviction Order and allowing Plaintiff possession of the premises.  Plaintiff also seeks injunctive

relief prohibiting Defendants from interfering with her right to quiet enjoyment, from entering into a sale/lease/rent or otherwise with the subject property.  In the alternative, Plaintiff requests permission to access the property to remove her personal property.

It is Plaintiff's position that PNC was not the holder in due course of the Note, therefore PNC had no authority to initiate foreclosure proceedings against the property.  Plaintiff has asserted a number of claims against PNC: Fraudulent misrepresentation; intentional infliction of emotion distress; breach of fiduciary duty; civil conspiracy; set aside sheriff's sale; quiet title; wrongful foreclosure; breach of contract; and slander of title.

This action was originally filed in state court.  Defendants removed to federal court.

## II.   Standard

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions.  <u>Dataphase Sys. Inc. v. CL Sys., Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1981) (en banc ).  This Court must consider (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits.  <u>Id.</u>

### A.   Irreparable Harm

"In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  <u>Iowa Utilities Bd. v. F.C.C.</u>, 109 F.3d 418, 425 (8th Cir.

1996).  Here, Plaintiff is no longer in the home, and title to the home has already been transferred to Freddie Mac.  (Doc. No. 140)   Further, PNC asserts that Plaintiff has already been given permission to enter the premises to retrieve her personal property.  Accordingly, Plaintiff cannot show that absent the requested relief, she will suffer irreparable harm.

IT IS HEREBY ORDERED that Plaintiff's Motion for a Temporary Restraining Order [Doc. No. 1] is DENIED.

Date:   June 30, 2011


s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court