UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joan D. Wittkowski,

      Plaintiff,

v.

PNC Mortgage; and
XYZ Corporation; ABC
Partnership; John Doe (1-50)
and Mary Roe (1-50), whose
true names are unknown to
Plaintiff,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-1602

_____

      Richard W. Petty, RWP Law Office, Counsel for Plaintiff.

      David A. Schooler, Briggs and Morgan, P.A., Counsel for Defendant PNC
Mortgage.

_____

      This matter is before the Court on Defendant PNC Mortgage's motion to

dismiss.  For the reasons set forth below, the Court will grant the motion in its

entirety.

**I.**      **Background**

      Plaintiff purchased a home in Clearwater, Minnesota in 1981, for $39,700;

the mortgage deed was held by the United States.  (Complaint ¶ 11.)  Plaintiff

refinanced her home with National City Mortgage on May 10, 2007, for $173,600.

(Id. ¶ 12.)  On March 6, 2009, Plaintiff received a letter from National City

Mortgage, informing Plaintiff that she had defaulted on the mortgage.  (Id. ¶ 14.)

Plaintiff alleges that on information and belief, she was approved for a loan

modification on May 1, 2009 at an interest rate of 5.875% for a loan term of 480

months with the first payment of $1,309.47 due on June 1, 2009.  (Id. ¶ 15.)

On June 3, 2009, Plaintiff received a letter from National City Mortgage

which stated "If you qualify under the federal government's Home Affordable

Modification program [("HAMP")] and comply with the terms of the Home

Affordable Modification Program Trial Period Plan, we will modify your

mortgage loan and you can avoid foreclosure."  (Id. ¶ 17.)  Three months later,

Plaintiff entered into a Home Affordable Modification Trial Period Plan ("TPP")

contract. (Id. ¶ 18.)

Plaintiff received another letter dated October 1, 2009 which informed her

that National City Bank had become part of PNC Mortgage ("PNC"), and that on

November 12, 2009, she received a fax from PNC with four documents she had

previously submitted for the loan modification.  (Id. ¶¶ 20 and 21.)  She was

instructed to white out the prior dates, put in the current date and resubmit the

information.  (<u>Id.</u>)  Plaintiff did so and resubmitted the documents.  On

November 19, 2009, Plaintiff received another letter from PNC notifying her that

additional documents were needed.  (<u>Id.</u> ¶ 23.)  She alleges that she received

another letter in December 2009 notifying her that additional documents were

needed.  (<u>Id.</u> ¶ 24.)

  In January 2010, Plaintiff was notified by letter acknowledging that

Plaintiff was participating in HAMP, but that she was at risk of losing eligibility

for a permanent modification unless she submitted the requested additional

documents - which was evidence of required TPP payments and income

verification.  (<u>Id.</u> ¶ 26.)  Plaintiff alleges that such documents were provided

PNC.  (<u>Id.</u> ¶¶ 27-29.)

  On March 15, 2010, PNC returned Plaintiff's check in the amount of

$437.12, because such amount was insufficient to reinstate her loan from default.

(<u>Id.</u> ¶ 30.)  Plaintiff then received a notice of default on March 16, 2010.  (<u>Id.</u> ¶ 31.)

Plaintiff had submitted a hardship assistance request under the Making Home

Affordable Program ("MHAP") but PNC requested additional information before

determining whether assistance was appropriate.  Plaintiff alleges she provided

all requested information.  (Id. ¶ 34.)  On June 25, 2010, Plaintiff was notified that

her property would be foreclosed.  (Id. ¶ 37.)

PNC thereafter executed a sheriff's sale of Plaintiff's home as previously

scheduled on September 7, 2010.  Plaintiff believes that HUD purchased the home

for $186,416.59.  (Id. ¶ 41.)  On April 15, 2011, an Eviction Order was entered.

(Doc. No. 3 (Am. Motion for Temporary Restraining Order ¶ 8).)  On or about

June 7, 2011, a lockout was executed on the property.  (Id. ¶ 9.)

## II.    Procedural History

This action was originally filed in state court on June 8, 2011, and

Defendants removed the action to federal court on June 17, 2011.  In her

Complaint, Plaintiff has asserted a number of claims against PNC: Fraudulent

misrepresentation; intentional infliction of emotion distress; breach of fiduciary

duty; civil conspiracy; set aside sheriff's sale; quiet title; wrongful foreclosure;

breach of contract; and slander of title.  Plaintiff brought a motion for preliminary

injunction by which she sought an order setting aside the Eviction Order and

allowing Plaintiff possession of the premises.  Plaintiff also sought injunctive

relief prohibiting Defendants from interfering with her right to quiet enjoyment,

from entering into a sale/lease/rent or otherwise with the subject property.  In the

alternative, Plaintiff requested permission to access the property to remove her personal property.

The Court denied Plaintiff's motion for preliminary injunctive relief, finding that Plaintiff had not demonstrated she would suffer irreparable harm if the requested relief were not granted.  Specifically, the Court found that "Plaintiff is no longer in the home, and title to the home has already been transferred to Freddie Mac."  (Doc. No. 16.)   The Court further found that Plaintiff had already been given permission to enter the premises to retrieve her personal property. (Id.)

PNC now moves the Court to dismiss this action with prejudice.  Plaintiff did not file a written response to the motion to dismiss, and did not file a motion requesting an extension to file a response.  The matter was set for hearing on November 8, 2011 at 9:00 a.m.  Plaintiff's counsel did seek a continuance of the hearing in the afternoon of November 7, 2011, but such request was denied.[1]

---

[1]Despite the fact that Plaintiff had not filed a written response to the motion to dismiss, and only sought a continuance the afternoon before the hearing, Plaintiff's counsel made another attempt to continue the hearing by calling defense counsel at 8:10 a.m., the morning of November 8, 2011.  Because defense counsel did not oppose a continuance, Plaintiff's counsel assumed no further action was required on his part, and he called his client and told her the hearing was cancelled.  The Plaintiff, Joan Wittkowski, called the Court's chambers to seek verification that the hearing had been cancelled. Plaintiff was informed by the Court's calendar clerk that the matter had not been cancelled, and that she should appear for the hearing.  At

At the hearing, Plaintiff's counsel did request the opportunity to present an oral argument.  The Court inquired of Plaintiff's counsel why no opposition memorandum had been filed, and Plaintiff's counsel responded that as his client had not paid any legal fees, he decided to the oppose the motion "on the cheap[2]."

Pursuant to Local Rule 7.1(e), where a party fails to timely deliver and serve a memorandum of law, the Court "may strike the hearing from its motion calendar, continue the hearing, refuse to permit oral argument by the party not filing the required statement, consider the matter submitted without oral argument, allow reasonable attorney's fees, or proceed in such other manner as the Court deems appropriate."

Under the circumstances present in this case, the Court did not permit Plaintiff's counsel to present oral argument in opposition to the motion to dismiss.  Accordingly, the Court has considered the motion submitted without oral argument.

---

9:00 a.m., defense counsel and the Plaintiff were present in the courtroom.  Plaintiff's counsel was not present.  Plaintiff's counsel eventually appeared before the Court at 9:45 a.m.  The Court explained to Plaintiff's counsel that only the Court had the power to cancel the hearing.

[2]The Court notes that at no time did Plaintiff's counsel move to withdraw from this case, or file any other pleading in defense of the case.

### III.    Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state a

claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

Id. (citations omitted).

### IV.    Analysis

#### A.    Breach of Contract

Plaintiff claims that the parties had an agreement that if Plaintiff met all of

the conditions set forth in the TPP, PNC would modify Plaintiff' mortgage.

Many courts have held that failure to provide a permanent loan modification

based on a similar TPP agreement alone does not state a claim for breach of

contract.  See, e.g., Lonberg v. Freddie Mac, 776 F. Supp. 2d 1202, 1209 (D. Or.

7

2011) (express terms of TPP provided that conditions precedent had to be

fulfilled before plaintiff would be entitled to a permanent loan modification, and

where plaintiff failed to allege that all conditions precedent were met, plaintiff

failed to state a claim for breach of contract); Bourdelais v. J.P. Morgan Chase

Bank, N.A. et al., Civil No. 3:10CV670 -HEH, 2011 WL 1306311 (E.D. Va. Apr. 1,

2011) (same); Morales v. Chase Home Fin. LLC, No. C 10-02068 JSW, 2011 WL

1670045 (N.D. Cal. Apr. 11, 2011); (same); Salvador v. Bank of Am, N.A., No. 10-

53570 JPS, 2011 WL 1833188, at *4 (Bkrtcy M.D. Ga. May 12, 2011) (same).

Plaintiff's breach of contract claim must be reviewed pursuant to

Minnesota law, which provides that a breach of contract claim has the following

elements: formation of a contract; performance of conditions precedent; and

breach.  Zinter v. Univ. of Minn., 799 N.W.2d 243, 245 (Minn. Ct. App. 2011).  A

contract has been formed where there is a specific and definite offer, acceptance

and consideration.  Pine River State Bank v. Mettille, 333 N.W.2d 622, 626-27

(Minn. 1983).  With respect to certain credit agreements, including home loan

modifications, Minnesota law provides that such agreements be in writing,

express consideration, set forth the relevant terms and conditions, and be signed

by the creditor and debtor. Minn. Stat. § 513.33.  Olivares v. PNC Bank, Civil No.

8

11-1626 ADM/JJK, 2011 WL 4860167, at * 5 (D. Minn. Oct. 13, 2011) (dismissing

breach of contract claim based on TPP, as TPP did not set forth relevant terms

and conditions of a modified home loan, such as the interest rate or the monthly

principal and interest payment).

   The Court finds that the TPP at issue here did not create an enforceable

contract.  The TPP specifically provides that it "is not a modification of the Loan

Documents and that the Loan Documents will not be modified unless and until

(i) [Plaintiff] meet all of the conditions required for modification; (ii) [Plaintiff]

receive a fully executed copy of a Modification Agreement, and (iii) the

Modification Effective Date has passed."  (Schooler Aff., Ex. A, §  2(G).)  The TPP

further provides that the Loan Documents will not be modified if, prior to the

Modification Effective Date, the Lender does not provide a fully executed copy of

the TPP and the Modification Agreement, Plaintiff has not made the TPP

payments or the Lender determines Plaintiff's representations in Section 1 of the

TPP are no longer true.  (Id. § 2 (F).)

   Pursuant to the terms of the TPP, Plaintiff was not promised a permanent

loan modification in exchange for making timely payments and fulfilling the TPP

document requirements.  There is no evidence before the Court that Plaintiff

received a fully executed copy of the TPP or that she was qualified for a

permanent loan modification.  In fact, in her Complaint she admits she received

two notices from PNC that it could not approve or finalize the loan modification

and that Plaintiff did not qualify for a permanent loan.  (Comp. ¶ 32, 60.)  In

addition, the TPP does not set forth all of the relevant terms of a credit agreement

as required by Minnesota law, such as the interest rate and the payment

amounts.  Plaintiff has thus failed to state a breach of contract claim, warranting

dismissal with prejudice.

### B.    Wrongful Foreclosure

The property at issue was sold on September 7, 2010, and pursuant to

Minnesota law, the redemption period expired on or about March 7, 2011.  Minn.

Stat. § 580.23, subd. 1 (providing for a six month redemption period).  Plaintiff

has not alleged that the parties agreed to an extension of the redemption period,

nor has Plaintiff alleged that the redemption period should be preserved

pursuant to Minn. Stat. § 580.28.  A claimed irregularity in foreclosure

proceedings, asserted after the statutory redemption period, is an impermissible

collateral attack.  Prior Lake State Bank v. Mahoney, 298 Minn. 567, 216 N.W.2d

681 (1974).  Plaintiff is thus proscribed from challenging the validity of the

foreclosure proceedings.  See Tully v. Bank of Am., N.A., 10-4734, 2011 WL

1882665, at *6 (D. Minn. May 17, 2011).

### C.       Fraud/Slander of Title

PNC asserts that Plaintiff has failed to identify any false statements made

by PNC.  Nor has she identified any false statements to support her slander of

title claim.  Instead, she simply asserts the elements of these claims without any

factual support.

A claim of fraud must be plead with particularity.  Fed. R. Civ. P. 9 (b).

The elements of a claim of fraudulent misrepresentation are: "(1) there was a false

representation by a party of a past or existing material fact susceptible of

knowledge; (2) made with knowledge of the falsity of the representation or made

as of the party's own knowledge without knowing whether it was true or false;

(3) with the intention to induce another to act in reliance thereon; (4) that the

representation caused the other party to act in reliance thereon; and (5) that the

party suffer pecuniary damage as a result of the reliance."  Specialized Tours, Inc.

v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986).  In addition, to adequately allege a

fraud claim, the Plaintiff must plead the "'who, what, where, when, and how' of

the alleged fraud."  United States ex. rel. v. St. Luke's Hosp., Inc., 441 F.3d 552,

556 (8th Cir. 2006).

The Court finds that Plaintiff has not asserted factual allegations to support her claims of fraud.  Plaintiff has not identified any false statement made to her related to a past or existing fact upon which she relied.  The TPP specifically provided that it was not a permanent loan modification, and that the loan would not be modified unless Plaintiff met specific requirements.  Plaintiff cannot base a fraud claim on a party's statement of intention to act in the future.  Schoenhals v. Mains, 504 N.W.2d 233 (Minn. Ct. App. 1993) (fraud action barred where alleged misrepresentations were based on the occurrence of future events).

Finally, the Court finds that because the TPP explicitly provided that it was not a permanent loan modification agreement, and that such an agreement would not be offered unless and until certain conditions were met, Plaintiff could not have reasonably believed that she was guaranteed a permanent loan modification.  Morales v. Chase Home Fin. LLC, No. C 10-02058, 2011 WL 1670045, at *8 (N.D. Cal. Apr. 11, 2011) (finding that there was no promise that Plaintiffs would be found eligible for permanent loan modification on which Plaintiffs could reasonably rely).

Similarly, to state a claim for slander of title, Plaintiff must assert that there was a false statement, published to others, with malice, and that such publication caused her pecuniary loss.  <u>Paidar v. Hughes</u>, 615 N.W.2d 276- 279-80 (Minn. 2000).  Plaintiff has failed to identify a false statement that was maliciously published, or the damages that resulted from the alleged false statement.  Accordingly, Plaintiff's claims based on fraud will be dismissed.

**D.     Intentional Infliction of Emotional Distress**

"[T]he tort of intentional infliction of emotional distress requires proof that: (1) the conduct complained of was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; (4) and the distress suffered was severe. The conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." <u>Kelly v. City of Minneapolis</u>, 598 N.W.2d 657, 662 (Minn. 1999) (citing <u>Hubbard v. United Press Int'l, Inc.</u>, 330 N.W.2d 428 (Minn. 1983)).  Plaintiff has not alleged any outrageous behavior that would support a claim for intentional infliction of emotional distress.  Accordingly, the Court will dismiss this claim.

### E.      Breach of Fiduciary Duty

Plaintiff also asserts that PNC breached its fiduciary duties to Plaintiff by

concealing its intent regarding modification of her loan.  This claim has no merit,

however, because under Minnesota law, a lender does not owe a fiduciary duty

to a borrower.  Klein v. First Edina Nat. Bank, 293 Minn. 418, 422, 196 N.W.2d

619, 623 (1972) (finding that "when a bank transacts business with a depositor or

other customer, it has no special duty to counsel the customer and inform him of

every material fact relating to the transaction-including the bank's motive, if

material, for participating in the transaction-unless special circumstances exist,

such as where the bank knows or has reason to know that the customer is placing

his trust and confidence in the bank and is relying on the bank so to counsel and

inform him).   Plaintiff has not alleged that PNC knew or had reason to know that

she was placing trust and confidence in PNC, and was relying on PNC for

counsel.  In fact, it is clear from Plaintiff's motion for injunctive relief that she had

obtained the services of an attorney before the home was foreclosed.

### F.      Civil Conspiracy

Plaintiff also alleges that defendants agreed between and among

themselves to engage in a conspiracy to defraud Plaintiff.  "Common-law

14

conspiracy involves a combination of persons to accomplish either an unlawful purpose or a lawful purpose by unlawful means." <u>Anderson v. Douglas County</u>, 4 F.3d 574, 578 (8th Cir. 1993) (citing <u>Harding v. Ohio Casualty Ins. Co.</u>, 230 Minn. 327, 337, 41 N.W.2d 818, 824 (1950)).  "To prove conspiracy, a party must specifically present facts tending to show agreement and concerted action. Conclusory allegations are insufficient."  <u>Id.</u>

The Court finds that this claim fails as well as Plaintiff does not allege any facts showing an agreement or meeting of the minds between PNC and other defendant.  Plaintiff merely asserts, in conclusory fashion, that defendant were engaged in a conspiracy designed to further an illegal act.  Such allegations are not sufficient.

**IT IS HEREBY ORDERED** the Defendant PNC Mortgage's Motion to Dismiss [Doc. No. 8] is GRANTED.  This matter is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Date:   November 18, 2011

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court